Cite as 2024 Ark. App. 466

# ARKANSAS COURT OF APPEALS
DIVISION III
No. CV-22-647

| | | |
|---|---|---|
| JACKIE PARKER | | **Opinion Delivered** October 2, 2024 |
| | APPELLANT | |
| | | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SIXTH DIVISION |
| V. | | [NO. 60CV-18-3812] |
| CITY OF LITTLE ROCK | | |
| | APPELLEE | HONORABLE TIMOTHY DAVIS FOX, JUDGE |
| | | |
| | | AFFIRMED |

## ROBERT J. GLADWIN, Judge

Appellant Jackie Parker ("Parker") appeals the Pulaski County Circuit Court's order affirming the Little Rock Civil Service Commission's ("Commission") decision to uphold his termination from the Little Rock Police Department ("LRPD") on November 6, 2017. Parker was terminated following two incidents in which he did not appropriately respond to information provided by dispatch and failed to make necessary arrests in both instances. Parker appealed his termination to the Commission, which upheld the termination. He then appealed to the Pulaski County Circuit Court, which affirmed the Commission's decision.

Parker argues on appeal that the circuit court erred in finding his due process rights were not violated, and furthermore, the circuit court erred in affirming the Commission's decision upholding his termination. We affirm.

## I. *Factual Background*

Parker served as an officer with the LRPD for twenty-two years prior to his termination. When Kenneth Buckner took over as chief of police of the LRPD in June 2014, he instituted an unwritten policy that officers found in violation of LRPD policies after having previously been suspended for more than sixty days were automatically subject to termination. In April 2015, Parker, as an acting supervisor, advised a subordinate officer against arresting an individual at a gas station when the officer saw a weapon in the individual's car because Parker suggested the officer had no proof the individual was in possession of the weapon. Chief Buckner demoted Parker as a result of the April 2015 incident. Parker admitted that in 2015 when he was demoted, Chief Buckner told him that if he did anything else that led to a one-day suspension, he would be terminated. Parker conceded that Chief Buckner informed him at that time that he had more than sixty days' suspension. Parker acknowledged that Assistant Chief Hayward Finks was present when Chief Buckner demoted him and warned him about being terminated for any further infractions.

Two more infractions did occur, which ultimately led to Parker's termination. On May 18, 2017, Parker encountered an individual soliciting on University Avenue. Parker obtained the individual's driver's license, and upon radioing in the information, learned that

the individual was a parole violator. Alleging dispatch did not inform him that the individual had an active warrant for his arrest, Parker issued a citation to the individual and released him.

The second incident occurred the following day. On May 19, Parker was one of five officers that responded to a call regarding a disturbance in which the caller's ex-boyfriend was refusing to leave. Parker offered to contact dispatch to run the identifying information on the ex-boyfriend at the scene. Dispatch informed Parker that the ex-boyfriend did not have any warrants for his arrest but that the caller did have an order of protection against the ex-boyfriend, which should have resulted in an arrest. Parker did not relay the information concerning the protective order to the other officers at the scene, and the ex-boyfriend was escorted off the property and directed not to return.

Sergeant Gregory Quiller was Parker's acting supervisor on May 19, 2017. When the call came in on May 19, Sergeant Quiller ran the subject's name to determine how many officers to send to the scene. Later that day, Sergeant Quiller reviewed the incident report and discovered that the subject left the scene without further incident. Sergeant Quiller asked Officer Rena Evans, the primary officer on the scene, why she did not arrest the subject, and she told him that she did not know the caller had an order of protection against the subject. Officer Evans stated that Parker "conducted a warrants check on [the ex-boyfriend] and relayed to her that [he] did not have any active warrants, therefore [he] was allowed to leave the scene." Sergeant Quiller commanded Officer Evans to go back and take

3

the subject into custody for violating the protective order. Sergeant Quiller directed the officers who were on the scene to submit letters about the May 19 incident.

Sergeant Quiller then initiated an investigation of Parker in relation to the May 19 incident. Sergeant Quiller questioned Parker about why he did not arrest the ex-boyfriend. Parker reported that he did not hear dispatch mention the order of protection because he did not hear the "code 10-35." Sergeant Quiller was not aware of the May 18 incident when he questioned Parker about the May 19 incident.

Sergeant Quiller decided to investigate whether Parker had any similar instances of conduct and discovered the failure to arrest on May 18. Parker was directed to provide a letter to Sergeant Quiller that contained his statement regarding each incident. Parker explained that he did not arrest the individual on May 18 because he again didn't hear the phrase "10-35 traffic." Parker learned shortly thereafter that LRPD Internal Affairs had opened an investigation concerning the two incidents.

When questioned about the incidents by LRPD Internal Affairs, Parker denied that he intentionally ignored or chose not to serve a warrant or a protection order. In an August 2017 LRPD Internal Affairs memorandum concerning Parker, the inspector reviewed multiple reports concerning Parker and noted that he could not locate any reports in his file, indicating that he had ignored or failed to respond in prior encounters. However, Parker's Internal Affairs file contained the evaluations of Parker's chain of command, Sergeant Quiller and Lieutenant Troy Ellison, who both recommended remedial training and a twenty-five- or thirty-day suspension. Captain Michael Davis reviewed Quiller's and Ellison's

4

evaluations and proposed that Parker be terminated because he had seventeen sustained disciplinary charges resulting in sixty days of suspension and one demotion. Captain Davis opined that another suspension would not correct Parker's negative behavior.

Two months later, Parker was informed by Chief Buckner that disciplinary action was being considered against him in relation to the incidents, and Parker declined an administrative hearing concerning the disciplinary action. Parker was terminated from the LRPD on November 6, 2017. In requesting a hearing before the Commission, Parker argued that his letter of termination mentioned only the two incidents in May but did not include any mention of his disciplinary history or Chief Buckner's sixty-day suspension policy.

At the hearing before the Commission, Sergeant Quiller testified that Parker's failure to arrest in both instances—because he did not hear the code 10-35—was not a valid reason to refrain from arresting the subjects. Sergeant Quiller noted that the code 10-35 had no bearing on whether the officers should arrest the subject. Sergeant Quiller concluded that Parker should have inquired further in both instances about whether the subjects should have been arrested.

Assistant Chief Hayward Finks testified that the LRPD had a policy of detaining all parole violators and contacting the Arkansas Department of Correction to determine whether the subject should be arrested. Assistant Chief Finks testified that he was present at the meeting with Chief Buckner and Parker wherein Chief Buckner informed Parker of the sixty-day suspension policy and that any further discipline for reckless or negligent behavior would lead to termination. Assistant Chief Finks stated that all of Parker's past

disciplinary history was "in the vein of dereliction of duty or failure to take action," so he believed termination was appropriate. He stated that he would have recommended Parker's termination even absent Chief Buckner's sixty-day suspension policy because of Parker's history and the May 18 and 19 incidents.

Chief Buckner testified that Parker's failure to arrest the subjects on May 18 and 19 constituted both neglect of duty and dereliction of duty. Chief Buckner stated that he reviewed Parker's disciplinary history—which he described as extensive—and noted Parker was regularly cited for "dereliction of duty, conduct unbecoming, neglect of duty," and failure to "remain alert and observant." He maintained that Parker's disciplinary history reflected that Parker was unable to effectively perform his job. Chief Buckner testified that Parker was the second individual terminated as a result of this policy.

Chief Buckner confirmed that he informed Parker of his sixty-day suspension policy and indicated Parker understood. Chief Buckner agreed that his termination letter to Parker did not include any discussion of Parker's disciplinary history or days of suspension. Chief Buckner stated that he terminated Parker as the result of the totality of Parker's disciplinary history as well as the May 18 and 19 offenses because he considered Parker to be a habitual offender. Chief Buckner testified that every officer's disciplinary history is contemplated when determining the appropriate discipline for that officer's infraction. He also did not believe Parker's disciplinary issues could have been remedied with training.

Multiple LRPD officers testified about the proper procedures when hearing the information relayed by dispatch to Parker on May 18 and 19 and confirmed that, in both

6

instances, Parker should have requested additional information or effected an arrest of both individuals. The officers all further agreed that the information relayed to Parker should have resulted in the subject's arrest on May 19.

Parker testified regarding the May 19 incident that he heard dispatch say the subject did not have any warrants but did not hear that the caller had an order of protection against the subject. Parker asserted that if he had heard dispatch report that the caller had an order of protection against the subject, he would have made the arrest. Parker admitted that he told the subject on May 18 that dispatch reported the subject was a parole violator. Parker testified that his failure to follow up on the information that the subject was a parole violator was due to dispatch's failure to inform him of any warrants.

The Commission unanimously voted to uphold the LRPD's determination that Parker violated the orders and regulations set forth in his termination letter. The Commission voted 3–2 to uphold Parker's termination, which, pursuant to the Commission's rules, sustained Parker's termination.

Parker filed his notice of appeal of the Commission's findings and complaint against the City of Little Rock (the "City") on June 7, 2018, alleging claims for violation of due process and equal protection pursuant to 42 U.S.C. § 1983, and wrongful discharge. The City filed a notice of removal on July 11, noting that Parker was a resident of Florida and had asserted federal claims. In the federal litigation, Parker alleged that "[t]here are many instances of similar conduct by white LRPD officers who were either not disciplined or disciplined more [sic] less harshly."

During the federal litigation, the City moved for summary judgment against Parker, which was granted in part and denied in part. The Eastern District of Arkansas granted summary judgment in favor of the City on Parker's claims for race discrimination, age discrimination, retaliation, and the Arkansas Whistle-Blower Act but denied summary judgment to the City on Parker's due-process claim, concluding that a material dispute existed regarding whether Parker was sufficiently notified of the sixty-day suspension policy prior to his termination. On a joint motion by the parties, the Eastern District of Arkansas remanded Parker's due-process claims to the Pulaski County Circuit Court.

The parties submitted a supplemental record to the circuit court. The parties also submitted the exhibits presented to the Commission and the transcript of the civil-service hearing. At the hearing before the circuit court, the court afforded the parties the opportunity to present any additional testimony, and the parties agreed that because of the voluminous proceedings, no additional testimony was necessary. On June 20, 2022, the circuit court affirmed the findings of the Commission, concluding that Parker failed to meet his burden of proof on his due-process claims. It is from this order that Parker instituted the present appeal.

## II. *Standard of Review*

The circuit court reviews decisions of the Civil Service Commission de novo and has jurisdiction to modify the punishment fixed by the Commission even if the court agrees that the officer violated department rules and regulations. *City of Little Rock v. Muncy*, 2017 Ark. App. 412, at 7–8, 526 S.W.3d 877, 881. This court then reviews the findings of the circuit

court to determine whether they are clearly against the preponderance of the evidence. *Id.* at 8, 536 S.W.3d at 881. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made. *Id.* at 8, 526 S.W.3d at 881–82. The circuit court does not merely review the commission's decision for error but instead conducts a de novo hearing on the record made before the commission and hears any additional competent testimony required by either party. *Little Rock Police Dep't v. Starks*, 2021 Ark. App. 323, at 4.

## III. Discussion

First, Parker contends that his rights to due process were violated because the City failed to provide notice of the charges against him or the proposed action that the City intended to take based on the charges. Parker further claims he was subsequently terminated without a fair opportunity to "defend, enforce, and protect his right to continued employment."

Arkansas law requires that "[n]o civil service employee shall be discharged, reduced in rank or compensation, or suspended for three (3) or more days without being notified in writing of the discharge, reduction in rank or compensation, or the suspension for three (3) or more days and its cause." Ark. Code Ann. § 14-51-308(a)(1) (Repl. 2013). Section 14-51-308(b) provides for the right to a trial before the Commission "[w]ithin ten (10) days after the notice in writing is served upon the officer . . . the person may request a trial before the board of civil service commissioners on the charges alleged as the grounds for discharge . . . ." Ark. Code Ann. § 14-51-308(b)(1). The Eighth Circuit Court of Appeals has held that

9

"minimal due process procedures for termination of employment of governmental employees was held to include notice of and a copy of the charge, reasonable time for filing a response, an opportunity for an oral appearance, and an evidentiary hearing." *Parks v. Goff*, 483 F. Supp. 502, 506 (E.D. Ark. 1980) (citing *Arnett v. Kennedy*, 416 U.S. 134 (1974)).

Parker was interviewed by, and submitted written statements to, Sergeant Quiller immediately following the May 18 and 19 events. Parker admits that he was advised of and interviewed for the internal-affairs investigation into the same incidents. Parker further concedes that Chief Buckner provided a notice-of-intent letter informing him that disciplinary action against him was being considered in relation to the May 18 and 19 incidents and that the letter identified potential violations of General Order 310 Section V.A. and Rule and Regulation Section 1/4002.00 and the bases for such violations. Parker knowingly declined an administrative hearing to address the alleged violations, which would have afforded him the opportunity to view the investigative files concerning the alleged violations.

Parker confirmed during the hearing before the Commission that he was informed by Chief Buckner in 2015, during the meeting on his demotion, that he would be terminated if he engaged in any further conduct that could result in a one-day suspension. Parker further admitted that Chief Buckner mentioned in that meeting that Parker had already been disciplined with more than sixty days of suspension. Assistant Chief Finks testified before the Commission that he was present when Chief Buckner informed Parker of the sixty-day suspension policy. Chief Buckner explained that his sixty-day suspension policy was simply

10

a tool he used when considering the appropriate discipline for any violations of LRPD policies.

We hold that the circuit court did not err in concluding that Parker received sufficient due process in relation to his termination. Parker was admittedly put on notice in 2015 that he would be terminated if he was subject to even a one-day suspension going forward. Parker was on notice in 2017 that an investigation had been opened concerning his conduct on May 18 and 19. Chief Buckner provided Parker a notice-of-intent letter informing Parker that disciplinary action was being considered against him in relation to the May 18 and 19 incidents. The letter also identified potential violations of General Order 310 Section V.A. and Rule and Regulation Section 1/4002.00 and the bases for the violations. Parker was provided an evidentiary hearing and offered testimony. Parker's counsel cross-examined the City's witnesses and presented Parker's witnesses, including Parker.

Second, Parker contends that the circuit court's finding that Parker was not wrongfully terminated was clearly erroneous and against a preponderance of the evidence. "Disputed facts are within the province of the fact-finder, and due deference is given to the circuit court's superior position to determine the credibility of the witnesses and the weight to be accorded to their testimony." *Starks*, 2021 Ark. App. 323, at 4. "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made." *Little Rock Police Dep't v. Phillips*, 2017 Ark. App. 410, at 3, 526 S.W.3d 872, 874.

A preponderance of the evidence supports a finding that Parker was fully aware of Chief Buckner's sixty-day suspension policy and that his termination was not clearly erroneous. The parties agreed on the general facts concerning the May 18 and 19 incidents. Parker blamed the May 18 failure to arrest on the fact that dispatch informed him the subject did not have any warrants. Parker indicated that he did not have a duty to inquire further when he was informed that the subject was a parole violator. As to the May 19 failure to arrest, Parker claimed that the area was very loud and that he did not hear the dispatcher tell him that the caller had an order of protection against the subject. Parker testified that he had no reason to inquire further on May 19 because, although he could not hear everything the dispatcher said, it was reported that the subject had no warrants. In both instances, Parker did not believe that he had violated any regulations because he was not given the 10-35 code for confidential transmissions.

Several officers testified at the hearing before the Commission, and every officer, including those called by Parker, confirmed that Parker had a duty to request additional information from dispatch before releasing each of the subjects. The testimony further illustrated that Parker did not follow standard procedures on May 18 and 19. Chief Buckner and Assistant Chief Finks both testified that they did not believe further training would alleviate Parker's inability to follow well-known procedures. The testimony from multiple LRPD officers regarding proper procedures confirmed Parker's deficiencies. We conclude that the circuit court did not clearly in concluding that Parker was not wrongfully terminated.

Affirmed.

VIRDEN and MURPHY, JJ., agree.

*Holleman & Associates, P.A.*, by: *Timothy A. Steadman*, for appellant.

*Thomas M. Carpenter*, Office of the City Attorney, for appellee.